IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM L. HARRIS and JEAN HARRIS, | CASE NO. 5:12-cv-00049-EJD |
| Plaintiffs, | **ORDER: (1) DENYING DEFENDANT CBS CORPORATION'S MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF IDAHO, EASTERN DIVISION; AND (2) DENYING CBS CORPORATION'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.** |
| v. | |
| CBS CORPORATION, | |
| Defendant. | |

This is a civil tort action based upon state law. Jurisdiction is predicated upon diversity of citizenship. 28 U.S.C. § 1332. The Defendant has filed two (2) motions. The first is a motion to dismiss under Rule 12(b)(3), Federal Rules of Civil Procedure, for improper venue. Alternatively, the Defendant argues for a transfer of the case for venue reasons under 28 U.S.C. § 1404. The second motion is made under Fed. R. Civ. P. 12(b)(1) seeking dismissal for lack of subject matter jurisdiction. The Defendant asserts that the Plaintiffs' claims are preempted and/or are nonjusticiable. Both motions are of a type that may be supported and opposed by the submission of affidavits without converting to a Rule 56 motion for summary judgment.[1] Both Parties have taken advantage of that opportunity.

The issues have been fully briefed and oral argument has been heard. Both motions are ripe for a decision. Both will be Denied for the reasons that follow.

---

[1] See Charter Oak Fire Ins. Co. v. Interstate Mechanical, Inc., 2012 WL 1357674 at * 6 (D. Or. Mar. 29, 2012) ("In deciding a motion under 12(b)(3), the court is not required to accept the truth of the plaintiff's allegations, . . . and may consider facts outside the parties pleadings without thereby converting the motion into a constructive motion for summary judgment.") (citing Argueto v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996); RFG Corp. v. Audio Data Video Enterprises, LLC, 2008 WL 5001382 at * 2 (E.D. Cal. Nov. 24, 2008) ("Moreover, a court may consider matters outside the pleadings to decide a Fed. R. Civ. P. 12(b)(3) motion without converting it to a summary judgment motion."); Colwell v. Department of Health and Human Services, 558 F.3d 1112, 1121 (9th Cir. 2009) ("In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit 'affidavits or any other evidence properly before the court . . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'") (quoting St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989)); Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a [Rule 12(b)(1)] factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.") (citing Savage v. Glendale Union High School, Dist. No. 205, Maricopa County, 343 F.3d 1036, 1040 n. 2 (9th Cir 2003)).

**A.     The Venue Motion.**

The Defendant CBS Corporation has filed a Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue to the District of Idaho (Doc. 9). The motion is predicated upon the allegations of the Complaint (Doc. 1) that the Plaintiff, Admiral William L. Harris, was exposed, without warning, to friable asbestos by the Defendant's predecessor corporation (Westinghouse Electric Corporation) causing Admiral Harris to develop malignant mesothelioma. The exposure allegedly took place at a United States Navy facility in Idaho during an eight (8) month period in 1964-65 while the Plaintiff, a Naval Officer, was undergoing training at that facility.

Under 28 U.S.C. § 1404(a), a case may be transferred for venue purposes if the transfer would serve the convenience of the parties and the interests of justice.[2] A district court "has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks and citation omitted). The cases[3] establish eight (8) factors to be weighed by the Court in deciding venue issues and whether a case should be transferred to another forum under § 1404:

1.     Plaintiffs' Choice of Forum. In this case both Plaintiffs have lived in the Northern District of California, San Jose Division, for over 30 years and Admiral Harris is now of an advanced age and in poor health, making travel difficult. Substantial deference is required to be given to the Plaintiffs' choice of forum, especially when, as in this case, there appears to be no suggestion of forum shopping or other motive that would tend to diminish the weight to be given to the Plaintiffs' choice. See Schutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970); West v. Quality Gold, Inc., 2012 WL 1067558 at * 3 (N.D. Cal. Mar. 28, 2012); Carolina Cas. Co. v. Data Broadcasting Corp., 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001). This factor militates against the motion to transfer.

2.     Convenience of the Parties. The Northern District of California would clearly be the

---

[2]There is no real dispute that venue is proper in the Northern District of California, San Jose Division, under 28 U.S.C. § 1391(b)(1). The arguments of the Parties focus upon the issue of a possible transfer to the District of Idaho under § 1404(a).

[3]See e.g., Jones, 211 F.3d at 498-99; Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Williams v. Bowman, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); Smith v. Aetna Life Ins. Co., 2011 WL 3904131 at * 2 (N.D. Cal. Sept. 6, 2011).

United States District Court
For the Northern District of California

1  most convenient forum for the Plaintiffs and Admiral Harris' healthcare providers, most if not all of
2  whom are residents of this District.  The Defendant is no longer engaged in the operation of the Naval
3  facility in Idaho.  Moreover, all of the present counsel of record for the Plaintiffs and the Defendant have
4  offices in California, and none have represented that they regularly practice in Idaho.  This factor
5  militates against the motion to transfer.

6        3.      <u>Convenience of the Witnesses</u>.  It appears from the arguments of the Parties that a greater
7  number of likely witnesses reside in California, or other places, than in Idaho; and for those living in
8  a place other than Northern California or Idaho, travel to and from Northern California is likely to be
9  less difficult than travel to and from Idaho.  The Defendant has identified only three or four witnesses
10 who live in Idaho and, if necessary, their testimony can be taken by deposition.  <u>See</u> <u>Munoz v. UPS</u>
11 <u>Ground Freight, Inc.</u>, 2007 WL 1795695 at * 4 (N.D. Cal. June 20, 2007); <u>Medicap Pharmacies, Inc.</u>
12 <u>v. Faidley</u>, 416 F. Supp. 2d 678, 688 (S.D. Iowa 2006).  This factor militates against the motion to
13 transfer.

14       4.      <u>Access to Tangible Evidence</u>.  The record suggests that Westinghouse ceased operations
15 at the Naval facility in Idaho and transferred control to another contractor in February of 1999.  This
16 included relinquishment of the principal records and documents that will be germane to the Plaintiffs'
17 claims and the Defendant's defenses in this action.  The record further suggests that the Government
18 is also likely to be in possession of relevant documents kept at other, unknown locations.  In any event,
19 it is probable that a document repository, either physical or digital or both, will be established by the
20 Parties, and in all likelihood that can be accomplished with greater convenience to all concerned in this
21 District rather than the District of Idaho.  <u>See</u> <u>Van Slyke v. Capital One Bank</u>, 503 F. Supp. 2d 1353,
22 1362 (N.D. Cal. 2007).  This factor does not weigh heavily in favor of either forum and is neutral, at
23 best, with respect to the Defendant's burden of persuasion on the motion to transfer.

24       5.      <u>Familiarity of Forum With Applicable Law</u>.  No determination has yet been made
25 concerning the source of the substantive law supplying the rule of decision to be applied in this case.
26 It may be determined that California law applies, in which event that circumstance would weigh against
27 a transfer.  Or, if the case is transferred before a decision is made concerning the applicable substantive
28 law, the district court in Idaho would be required to apply California's choice-of-law rules in making

3

CASE NO.
TITLE

1 that determination. Van Dusen v. Barrack, 376 U.S. 612, 84 S. Ct. 805 (1964). That, too, weighs 2 against a transfer. In any event, the cases recognize that the federal courts are adept at determining and 3 then applying the law of various jurisdictions;[4] and insofar as federal law will apply to some of the 4 issues in the case (especially the defenses being asserted) it is significant to the venue question that both 5 California and Idaho lie within the Ninth Circuit. This factor is neutral, at best, with respect to the 6 Defendant's burden of persuasion on the motion to transfer.

7   6.   Local Interest in the Case. It does not appear that this factor has any significant bearing 8 upon the venue issue in this case.

9   7.   Consolidation With Other Claims or Other Cases. It does not appear that this factor has 10 any bearing upon the venue issue in this case.

11   8.   State of Congestion of the Affected Courts. It does not appear that this factor has any 12 significant bearing upon the venue issue in this case. There is no meaningful statistical difference 13 between the Northern District of California and the District of Idaho as it relates to the degree of 14 congestion in the dockets of the two courts.

15 The Court concludes that the convenience of the Parties and the interests of justice do not favor 16 a transfer, that venue is proper in the Northern District of California, San Jose Division, and the Motion 17 by Defendant CBS Corporation to Dismiss For Improper Venue or, in the Alternative, to Transfer Venue 18 to the District of Idaho, Eastern Division (Doc. 9) is DENIED.

19 **B.   The Motion to Dismiss For Lack of Subject Matter Jurisdiction.**

20 The Defendant contends that the Court lacks subject matter jurisdiction because the Plaintiffs' 21 state law claims have been preempted and obliterated by federal law, or that the claims present 22 nonjusticiable political questions.[5]

23 A survey of the developing law regarding the preemption of certain state law tort claims by

---

[4] See Allstar Mktg. Group LLC v. Your Store Online, Inc., 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009).

[5] While no decision has yet been made as to whether the law of California or the law of Idaho will supply the rule of decision in this case, that uncertainty does not affect consideration of the present motion. The Defendant's assertion of preemption or the presence of a nonjusticiable political question would apply (or not apply) regardless of the source of the governing state law.

4

CASE NO.
TITLE

federal law reveals that there are two separate jurisprudential foundations underlying the concept of preemption. One is the Supremacy Clause of the Constitution, Art. VI, Cl. 2, and the other is the sovereign immunity that is preserved to the federal government in some instances by the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, ("FTCA") and which may be imputed to private actors in two situations.

The labels attached to the kinds of preemption flowing from the Supremacy Clause are express preemption, field preemption, and conflict preemption. The titles given to the types of sovereign immunity preemption or defenses based upon the Federal Tort Claims Act are the combatant activities defense and the government contractor's defense. Unfortunately, it is not uncommon for courts to mix these several theories of preemption-type defenses resulting in some confusion in the cases concerning the precise concept being considered.

In addition to these preemption theories of defense, there are also cases in which jurisdiction is simply declined because the issues presented by the litigation are deemed to be political or nonjusticiable.

Express preemption occurs under the Supremacy Clause when Congress explicitly defines the extent to which its enactments displace state law. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S. Ct. 2031, 2036 (1992); English v. General Electric Company, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275 (1990); Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299, 108 S. Ct. 1145, 1150 (1988); Shaw v. Delta Aire Lines, Inc., 463 U.S. 83, 95-98, 103 S. Ct. 2890, 2989-2900 (1983).

Field preemption occurs when the scheme of federal control is sufficiently comprehensive to create a reasonable inference that Congress did not intend to share regulation of the affected activity with the states. See English, 496 U.S. at 79, 110 S. Ct. at 2275; Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947); Moldo v Matsco, Inc. (In re Cybernetic Services, Inc.), 252 F.3d 1039, 1045-46 (9th Cir. 2001).

Conflict preemption occurs when compliance with both state and federal law is impossible, or where compliance with state law would frustrate the full execution of the activity as contemplated by federal authority. See English, 496 U.S. at 79, 110 S. Ct. at 2275; Florida Lime & Avocado Growers,

Inc. v. Paul, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217-18 (1963); Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941).

The combatant activities defense is based upon the Federal Tort Claims Act, especially § 2680(j), which excludes from the waiver of sovereign immunity granted by the statute, "[a]ny claim arising out of the combatant activities of the military or naval forces . . . during time of war." See Koohi v. United States, 976 F.2d 1328, 1333-34 (9th Cir. 1992); Bixby v. KBR, Inc., 748 F. Supp. 2d 1224, 1243-46 (D. Or. 2010).

The government contractor's defense is predicated upon the discretionary function exception in § 2680(a) to the waiver of sovereign immunity effected by the FTCA. The defense was formulated in Boyle v. United Technologies Corp., 487 U.S. 500, 108 S. Ct. 2510 (1988), and it "derives from the principle that where a contractor acts under the authority and direction of the United States, it shares the sovereign immunity enjoyed by the government." Harduvel v. General Dynamics Corporation, 878 F.2d 1311, 1316 (11th Cir. 1989) (Justice Powell sitting by designation).[6]

The Defendant's motion in this instance asserts a claim of field preemption, conflict preemption, and a combatant activities defense together with an argument that adjudication of the Plaintiffs' case would require resolution of nonjusticiable political issues. Significantly, the Defendant expressly disavows reliance upon a government contractor's defense "at this time."[7] (Doc. 13, p. 41, n. 20).

1.   Field Preemption.   The Defendant argues that "an extraordinarily comprehensive and incredibly detailed body of federal law completely occupies the field of war services operations, including procurement of the equipment essential to Navy combat activities and training of military personnel." A number of affidavits are submitted which describe in great detail the Navy's regulations and protocols relating to the procurement of materials, and the construction and operation of training

---

[6] There is also a doctrine known as the Feres defense. In Feres v. United States, 340 U.S. 135, 71 S. Ct. 153 (1950), the Court held that the FTCA does not authorize suits against the government for injuries to Armed Services personnel incurred in their military service. Boyle declined to give government contractors the full benefit of the Feres defense and, instead, fashioned the more limited government contractor's defense. See Chapman v. Westinghouse Electric Corp., 911 F.2d 267, 271 (9th Cir. 1990).

[7] Yet the Defendant cites, at three separate places in its brief (Doc. 13, pp. 5, 41, and 50) the decision in Boyle, in which the Supreme Court formulated the government contractor's defense.

1  facilities such as those involved in this case.[8] Simply put, however, the Defendant's discussion of field
2  preemption as applied to this case is long on skillfully constructed argument but short on persuasive
3  authority. No decision is cited holding that a similar plaintiff's tort claim under state law was foreclosed
4  on the basis of field preemption. On the contrary, the one decision most on point declined to apply field
5  preemption to substantially similar facts. Donn v. A.W. Chesterton Co. Inc., 842 F. Supp. 2d 803 (E.D.
6  Pa. 2012).[9]

7  Additionally, with respect to Admiral Harris' failure to warn claims in particular, there is a
8  disputed issue of fact concerning the Navy's degree of involvement in dictating – or not dictating – the
9  types of warnings that might be required by state tort law and the freedom (if not the duty) of the
10 contractor (Westinghouse) to comply with those requirements.[10] See Cipollone v. Liggett Group, Inc.,
11 505 U.S. 504, 112 S. Ct. 2608 (1992). The motion to dismiss based on field preemption will be Denied.

12     2.    Conflict Preemption. It may well turn out that the use of asbestos in the construction and
13 ongoing operation of the A1W nuclear reactor prototype at the National Engineering and Environmental
14 Laboratory in Idaho was required and was regulated by the Navy such that simultaneous compliance
15 with both state tort law on one hand, and the Navy's mandates on the other, was impossible insofar as
16 the use of the products is concerned. If so, conflict preemption will be available to the Defendant as a
17 complete defense to Admiral Harris' strict liability and other claims relating to this use of asbestos. It
18 is necessary, however, to examine the Plaintiffs' claims separately and individually in determining
19 preemption issues. Some claims may be preempted while others are not. Cipollone, supra. At the

---

[8] The facility involved in this case was the A1W (Aircraft Carrier – 1st Generation – Westinghouse) nuclear reactor prototype located within the Idaho National Engineering and Environmental Laboratory, Idaho Falls, Idaho. The A1W prototype is described as a full scale mock up of the nuclear powered propulsion system incorporated in the aircraft carrier Enterprise. Admiral Harris' training was in anticipation of his deployment aboard Enterprise.

[9] The Donn decision was rendered by the Transferee Judge (Hon. Eduardo C. Robreno) in the Multidistrict Litigation Docket No. 875, In re Asbestos Products Liability Litigation. The Multidistrict Litigation Panel ruled last December that future tag-a-long cases would not be transferred to the Transferee Judge. The Panel's order with respect to asbestos claims listed certain exceptions which included cases pending in the Northern District of California. See In re Asbestos Products Liability Litigation, 830 F. Supp. 2d 1377, 1380 (J.P.M.L. 2011). Whether this case might be transferred remains to be seen.

[10] The Plaintiffs call attention to the affidavit of their expert witness, Captain William A. Lowell, who offers opinions about this factual issue. (Doc. 34-4).

1 moment, the Court is unable to say that there is no genuine issue of fact[11] concerning any one of the
2 Plaintiffs' claims and the degree of Navy control exerted with respect to the operative facts underlying
3 them. Additionally, the Plaintiffs have reasonably requested an opportunity to conduct discovery
4 concerning these issues; and, as previously noted with respect to Admiral Harris' failure to warn claims,
5 the record already reflects a clear issue of fact in relation to those claims. It follows that the motion to
6 dismiss on the basis of conflict preemption will be Denied.

7    3. <u>Combatant Activities Preemtion.</u>  The FTCA, 28 U.S.C. § 2680(j), excludes from the
8 waiver of sovereign immunity otherwise granted by the Act:

9     Any claim arising out of the combatant activities of the
    military or naval forces, or the coast guard, during time of
10     war.

11 Hence, the combatant activities defense is derived from the government's preserved sovereign immunity
12 and is imputed to private actors in some cases while they are performing military functions. The defense
13 consists of three elements that are clearly prescribed by the statute itself: (1) the claim must arise out
14 of a combatant activity; (2) the combatant activity must have been performed pursuant to the direction
15 of military or naval forces; and (3) the combatant activity must have occurred during time of war.

16    The Ninth Circuit has recognized and applied the combatant activities defense. <u>Koohi v. United</u>
17 <u>States</u>, 976 F.2d 1328 (9th Cir. 1992). <u>See</u> also <u>Bertzlin v. Hughes Aircraft Co.</u>, 833 F. Supp. 1486 (C.D.
18 Cal. 1993). In <u>Koohi</u>, the court dealt specifically with the meaning to be given to the "time of war"
19 element of the defense. The court held that the phrase should be given a practical, common sense
20 definition that does not require a formal declaration of war by Congress under Article I, Section 8,
21 Clause 11 of the Constitution. Rather, the court held that a time of war exists under § 2680(j) whenever,
22 as a result of a deliberate decision of the Executive Branch, United States armed forces engage in an
23 organized series of hostile encounters on a significant scale with the military forces of another nation.
24 <u>Koohi</u>, 976 F.2d at 1335.

25    The <u>Koohi</u> court also gave definition to the term "combatant activities" by citing favorably to

---

[11]The Court recognizes that it is deciding a Rule 12(b)(1) motion and not a motion for summary judgment under Rule 56. Still, the standard is the same. A genuine issue of material fact prevents granting a motion under either rule. <u>See</u> <u>Rosales v. United States</u>, 824 F.2d 789, 803 (9th Cir. 1987).

8

CASE NO.
TITLE

1 Johnson v. United States, 170 F.2d 767, 770 (9th Cir. 1948), where the court defined the term as
2 including "not only physical violence, but activities both necessary to and in direct connection with,
3 actual hostilities." Koohi, 876 F.2d at 1333, n. 5.  Applying those definitions of the terms combatant
4 activities and time of war, the Koohi court had little difficulty in finding that the combatant activities
5 defense barred the plaintiff's claim against manufacturers whose ordinance was used by the Navy in
6 mistakenly shooting down a civilian aircraft in the midst of hostilities in the Persian Gulf in July, 1988,
7 during the so-called tanker war between Iraq and Iran.

8 Similarly, in Saleh v. Titan Corp., 580 F.3d 1 (D.C. Cir. 2009), upon which the Defendant relies,
9 the court held that the combatant activities defense was available to vanquish a claim against a private
10 contractor providing interrogation and translation services to the United States military at the Abu
11 Gharib prison in Iraq; and in Bentzlin v. Hughes Aircraft Co., 433 F. Supp. 1486 (C.D. Cal. 1993), the
12 court applied the combatant activities defense to dismiss a claim brought on behalf of a group of U.S.
13 Marines who were killed by an errant missile of friendly fire intended for an Iraqi target.

14 The facts of the present case stand in stark contrast to Koohi, Saleh, and Bentzlin, with respect
15 to the requirement that Admiral Harris' claim must have arisen out of combatant activities.  While, to
16 be sure, the Vietnam war was in progress during 1964-65, no reasonable person would suggest that
17 Idaho was ever thought of as a combat zone of that conflict.  It was a place well removed from any
18 hostilities by more than 5,000 miles, and Admiral Harris' activity in Idaho was limited to peaceful
19 preparatory training in the area of nuclear propulsion.  This is not to denigrate the importance or the
20 solemn character of Admiral Harris' duty assignment for training at the time, nor its eventual connection
21 to combat when he later entered harm's way on Enterprise, but it would be too much of a stretch to say
22 that such preliminary training constituted a combatant activity.  If it did, then the very word "combatant"
23 would become surplusage in the statute.  The defense would become available immediately with respect
24 to the performance of duty by any member of the armed services upon induction and the commencement
25 of training; and that result would accomplish precisely what the Supreme Court declined to do in Boyle
26 v. United Technologies Corporation, supra, as pointed out by Judge Robreno in Donn, supra, 842 F.
27 Supp. 2d at 814.  It is not necessary to define here what is meant by combatant activities.  It is enough
28 that any reasonable definition of the term would not include the activity involved in this case.  The

9
CASE NO.
TITLE

motion to dismiss based upon the combatant activities defense will be Denied.

4.     <u>Nonjusticiable Political Questions.</u>  Flowing from <u>Marbury v. Madison</u>, 1 Cranch 137, 5 U.S. 137 (1803), the political question doctrine protects the separation of powers and prevents the federal courts from overstepping their constitutionally defined role.  <u>Baker v. Carr</u>, 369 U.S. 186, 210, 82 S. Ct. 691, 706 (1962).  In <u>Baker</u>, the Court identified six indicia of a political question,[12] the presence of any one of which will require a court to abstain.

The Defendant argues that an adjudication of the Plaintiffs' claims would require the Court to evaluate the propriety of sensitive military judgments that are wholly committed to the President and Congress under the Constitution.  Specifically, the Defendant argues that "[i]t is not for the judiciary to second-guess the decisions made by the Navy with regard to the outfitting of its combat vessels and prototype training facilities with asbestos-containing insulation.  Nor is it for the courts to question the Navy's considered decisions regarding sailor training, hazard communication in military environments, and the relative risks of asbestos exposure to sailors in comparison to the technical and operational benefits of asbestos-containing materials."  (Defendant's Memorandum of Law, Doc. 13, p. 52).

In <u>Donn v. A.W. Chesterton Co., Inc.</u>, <u>supra</u>, Judge Robreno rejected this argument with respect to the plaintiff's failure to warn claims.

> Plaintiff, on the other hand, argues that this suit is an ordinary tort suit between two private parties . . . .  As such, the Court need not inquire or second guess any Navy policy on the use of asbestos. . . .   Nor does the Court have to second guess the Navy's warning

---

[12]The six (6) indicia are:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from mutifarious pronouncements by various departments on one question.

369 U.S. at 317, 82 S. Ct. at 710.

10

CASE NO.
TITLE

> procedures. . . . All the Court – and the fact-finder – must do is determine what the Navy did or did not allow with respect to warnings and rule on the liability of Defendants pursuant to well-defined state tort law principles. . . .
>
> * * * *
>
> Rather, this action is between private parties based on well defined tort law principles. It does not involve a challenge by a coordinate branch to another branch's decision. It is not, in short, the type of struggle for inter-branch supremacy that the doctrine of separation of powers and its corollary, the political question doctrine, seeks to avoid.
>
> To be sure, a judicial inquiry into what Navy policy was (in connection with equipment warnings) at the time Plaintiff served on a Navy vessel may be required. Yet, this inquiry does not implicate the wisdom and soundness of the Navy's policies or procedures. <u>The issue here is what the policy was with respect to warnings, not what it might (or should) have been.</u> Thus, none of the four <u>Baker</u> factors Defendants cite to are inextricable with the merits of the Plaintiff's claims.

842 F. Supp. 2d at 815-16 (emphasis supplied). <u>See</u> also <u>McMahon v. Presidential Airways, Inc.</u>, 502 F.3d 1331 (11th Cir. 2007) (in which the Eleventh Circuit, dealing with the political question doctrine, declined to dismiss a similar action under Rule 12(b)(1) for the same reason).

In this case, the declaration of Captain Lowell – and the interpretation of the declarations of the Defendant's experts – raise unanswered questions concerning precisely what the Navy prescribed, or did not prescribe, with specific reference to warnings concerning the dangers of asbestos fibers in the A1W facility, and whether the action or inaction of the Defendant with respect to such warnings was approved by the Navy either explicitly or by necessary implication. The Plaintiffs' request for further discovery should be granted before summary adjudication.

11

CASE NO.
TITLE

The Defendant's Rule 12(b)(1) Motion to Dismiss For Lack of Subject Matter Jurisdiction (Doc. 13) is DENIED in all respects.[13]

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

Dated: August 6th, 2012

---

[13] The discussion in the text has been limited to the Plaintiffs' failure to warn claims. It is much more likely that the Plaintiffs' other claims will run afoul of the Defendant's several defenses. However, because the case will be permitted to proceed for additional discovery, the motion to dismiss will be denied in its entirety without prejudice. In the meantime, the Plaintiffs may wish to reconsider whether they want to continue litigating issues other than the failure to warn claims.